MUELLER, Respondent, vs. MERCY HOME & HOSPITAL ASSOCIATION, Appellant.*

*January 6—February 3, 1953.*

* Motion for rehearing denied, with $25 costs, on March 31, 1953.

For the appellant there were briefs by *Nohl, Petrie, Stocking & Meixner,* and oral argument by *Lewis A. Stocking* and *Edmund F. Zeisig,* all of Milwaukee.

For the respondent there was a brief by *George B. Skogmo, Louis S. Wiener,* and *Ray T. McCann,* attorneys, and *Nathaniel D. Rothstein* of counsel, all of Milwaukee, and oral argument by *Mr. Skogmo* and *Mr. McCann.*

FRITZ, C. J. Prior to January 15, 1937, Dr. Rosenheimer owned premises on which he had his family residence and a hospital called the "Mercy Hospital." Upon his death his widow leased said premises, including the hospital, to Drs. William G. Doern and Gilbert F. Mueller, for the period extending from January 15, 1936, to April 1, 1937. In March, 1936, the defendant, Mercy Home & Hospital Association, was organized as a nonprofit corporation, and on March 11,

1936, at the first meeting of the organizers of the corporation, Fred Kuntz acted as chairman and Eleanor Raasch acted as secretary of the meeting. At that meeting the secretary reported:

"That a certified copy of the articles of organization of the Mercy Home & Hospital Association has been filed with the register of deeds of Milwaukee county, Wisconsin, and certificate of incorporation No. M–6076 issued on the 6th day of March, A. D. 1936, by the secretary of state of Wisconsin has been received and placed on file, whereupon the chairman announced that the Mercy Home & Hospital Association is a duly organized corporation licensed to do business in the state of Wisconsin.

"The offer of William G. Doern and Gilbert F. Mueller to subscribe for 20 units of active memberships of the Mercy Home & Hospital Association and to pay for same by assigning all their right, interest, and title in and to the Mercy Hospital, now located at 2319 N. Second street, Milwaukee, except the real estate on which same is located, to the Mercy Home & Hospital Association, said hospital now being on a self-sustaining basis, was accepted by unanimous vote. On motion duly made and seconded, it is resolved that each of the organizers retain one (1) contributing membership in the Mercy Home & Hospital Association for services rendered in the formation of said organization.

"On motion duly made, seconded, and carried the organizers turned over all business of the Mercy Home & Hospital Association over to the active members of the association, and the meeting adjourned to 9 a. m., March 12, 1936." The report was signed by the chairman Fred Kuntz, Joseph Alberti, and Eleanor Raasch.

Drs. Doern and Mueller devoted great efforts, financially, physically, and morally toward the corporation, both before and after the creation thereof. Together they operated the predecessor hospital, both before and after it was turned over to the defendant corporation. They jointly supplied money, equipment, and supplies, and gave a great deal of time and attention to the operation and maintenance of the hospital.

Dr. Mueller's main efforts were expended in managing the hospital until he resigned as secretary of the corporation in 1940, and after his resignation he continued to work at the hospital in his professional capacity as late as 1950. During most of the time, however, the business details relating to the hospital were assumed by Dr. Doern. Formal minutes were not common. Only three formal meetings were held from the inception of the corporation until the resignation of Dr. Mueller. During the time Dr. Mueller was away on a vacation in Mexico, Dr. Doern summoned two of the organizers of the corporation, Fred Kuntz and Eleanor Raasch, and had them execute ten units of active membership to Dr. Mueller, eight to himself, and two to Dr. Logan. At about this time Dr. Doern prepared minutes showing that out of the twenty active units subscribed for, only twelve had been paid for, and the then acting secretary was advised by Dr. Doern to issue nine units to himself, one to plaintiff, and two to Dr. Logan. The trial court found and concluded that the purported meeting never took place; and that a purported directors' meeting immediately following was never held. Dr. Mueller testified that he never sold, abandoned, or gave away his membership units, and that the first time it came to his attention that anybody questioned his ownership to these units, was in the latter part of November, 1946; that prior thereto his right to the ownership of his ten active units was never questioned, and that the first time that it came to his knowledge was after Dr. Doern's death in November, 1946.

The defendant, in its "introduction" to its brief, refers to a purported meeting of the defendant corporation on March 31, 1936. Upon the trial of the action the court properly found that this meeting was not genuine, and based its conclusions on clear and uncontradicted evidence. Accordingly, the court found that such a meeting never in fact took place, and refused to recognize it. It appears uncontradicted

that the so-called minutes of this illegal meeting were prepared sometime in 1940, and that plaintiff never had notice or knowledge of them. It is Dr. Mueller's position—which is duly substantiated by the evidence—that as far as his membership rights were concerned, he did go to Mexico in February, 1940, on a vacation, and that in his absence, Dr. Doern called a meeting and directed an issuance of ten active membership units to Dr. Mueller, eight to himself, and two to Dr. Logan. This action at that time was a reaffirmation by the defendant corporation of the rights that Dr. Mueller had paid for in 1936, and was entitled to absolutely. That he had paid for his stock in 1936 is conclusively admitted in the official minutes of the defendant corporation, when the offer of Drs. Doern and Mueller to subscribe for ten units each was accepted, and by corporate action the payment was acknowledged.

It is conceded that the certificate evidencing his title was never delivered to Dr. Mueller, and that he did not ask for it until he made written demands for it when he heard rumors, after the death of Dr. Doern, that the hospital was going to be sold from under him. It is admitted that sometime in 1940 or 1941 (the record not being clear as to the exact year, although the quantum of proof would indicate that it took place in 1941) an informal meeting took place at the corporation's hospital attended by Dr. Mueller and his attorney John Carbys, Dr. Doern, Mr. Lelinske, Dr. Logan, and Fred Kuntz. It is Dr. Mueller's position, supported by credible evidence that at said time, a proposal submitted by him in writing did not in any respect challenge Dr. Mueller's rights to his ten active membership units. Shortly before that time, Dr. Doern had directed the issuance of ten active membership units to Dr. Mueller, and had Eleanor Raasch and Fred Kuntz execute a certificate to Mueller evidencing his ownership. Shortly after that, Dr. Doern, without the knowledge of Dr. Mueller, secretively prepared some minutes, dating them back to March 31, 1936, and directed the secre-

tary of the corporation to issue nine units to Dr. Doern, two units to Dr. Logan, and one unit to plaintiff. Dr. Mueller, on his return from Mexico in 1940, heard of Dr. Doern's issuance of said units and balked at the issuance of two units to Dr. Logan—who was not a physician but an osteopath. The defendant fallaciously concludes from the demands made by plaintiff's attorney, George Skogmo, and the corporation's reply letter, that laches commenced at this time. That conclusion is contrary to the evidence and the trial court's conclusions that the plaintiff did not sleep on his rights. It cannot be discerned from the documentary evidence that Dr. Mueller was chargeable with notice that his claim to ten active units in the defendant corporation was not being recognized. The first time that Dr. Mueller knew that his active membership rights were being challenged was in November, 1946, after Dr. Doern died. Immediately after Dr. Mueller received information that the hospital was going to be sold, he sent a written notice to the defendant corporation demanding the delivery of his ten units and other relief. Upon the defendant's refusal to comply, Dr. Mueller commenced his action a few months after making the demand.

It appears from the record that in addition to the above-stated "active membership" issued by the corporation, it issued certificates of active membership between August 26, 1940, and April 15, 1946, to the following persons, and their respective number of units, to wit: Henry Doern—33 units; William G. Doern—1,326 units; Joseph Lelinske—26 units; Elizabeth M. Steinkrauss—16 units. The persons to whom these certificates were issued, and their assignees, were not made parties to this action. The trial court should not have determined the issue of whether the corporation had the legal right to issue such additional certificates, and decided such issues adversely to the interests of such persons not made parties.

The last two paragraphs of the judgment provided as follows:

"It is further adjudged and decreed that with the possible exception of Dr. James A. Logan, no other person was entitled to active membership units except Dr. William G. Doern and the plaintiff; that under its existing laws and regulations, the corporation could not validly issue stock to others except with the consent of persons originally qualified to hold such stock; that the plaintiff, neither expressly nor impliedly, consented to the issuance of active membership units to others than himself, or Dr. William G. Doern.

"It is further adjudged and decreed that the defendant corporation is ordered to supply a certificate of ten (10) active membership units in the defendant corporation and to issue additional active membership units to the plaintiff so that the total number of active membership units held by him will be the same as the number held by the heirs of Dr. William G. Doern as his legal successors, and that the defendant corporation is ordered to cancel all other active membership units issued to others than Dr. William G. Doern, or his legal successors in their capacities as his heirs, and active membership units to be issued to the plaintiff."

These two paragraphs, with the exception of that portion of the second paragraph which required the defendant corporation to supply to the plaintiff a certificate for ten (10) active membership units in the defendant corporation, were improper and should be stricken from the judgment.

*By the Court.*—Judgment modified so as to strike therefrom all of the last two paragraphs thereof, and substitute in lieu thereof the following: "It is further adjudged and decreed that the defendant corporation is ordered to supply to the plaintiff a certificate for ten (10) active membership units in the defendant corporation," and, as so modified, is affirmed.

The following memorandum was filed March 31, 1953:

FRITZ, C. J. (*on motion for rehearing*). Counsel for plaintiff in their brief in support of their motion for rehearing state:

"Plaintiff-respondent being owner of ten (10) active membership units in the appellant corporation is entitled to have his pre-emptive rights protected; and the decision herein should be clarified so as to afford such protection."

This court in its original opinion intentionally did not pass on the question of whether members of a nonstock, nonprofit eleemosynary corporation, such as defendant corporation, have any pre-emptive rights, because we deemed it unnecessary to decide such issue.

*By the Court.*—Motion for rehearing denied with costs.